UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KUMARA K. HUBBERT,

         Petitioner,

v.                                    CASE NO. 04-CV-71018-DT
                                    HONORABLE JOHN CORBETT O'MEARA

PAUL H. RENICO,

         Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

    This matter is pending before the Court on Kumara K. Hubbert's *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. Respondent Paul H. Renico urges the Court through counsel to deny the habeas petition. Petitioner alleges in rebuttal that he did not present all his issues to the state court. He seeks to voluntarily dismiss his case without prejudice so that he can pursue state remedies for five new claims raised in his rebuttal.

    Having reviewed the parties' arguments and the state court record, the Court concludes that Petitioner's exhausted claims are procedurally defaulted or without merit and that Petitioner has not shown "good cause" for failing to raise his unexhausted claims in state court. Consequently, Petitioner's request for a voluntary dismissal and his application for a writ of habeas corpus will be denied.

### I. Background

    Petitioner was charged with first-degree (felony) murder, assault with intent to rob while armed, and possession of a firearm during the commission of a felony (felony firearm). He and his co-defendant, Hubert Marshall, were tried together, but before separate juries. On January 7,

2000, Petitioner was found guilty of second-degree murder, MICH. COMP. LAWS § 750.317,

assault with intent to rob while armed, MICH. COMP. LAWS § 750.89, and felony firearm, MICH.

COMP. LAWS § 750.227b.  The convictions arose from:

> the shooting death of Carl Higginson.  Evidence at trial indicated that Mr.
> Higginson, who was in an automobile, stopped at an apartment complex to ask for
> directions from the two defendants.  According to witnesses, when Mr. Higginson
> stopped, defendant made a statement about robbing him.  Witnesses saw [co-
> defendant Hubert] Marshall pass a gun to defendant shortly before hearing shots
> fired.  However, Marshall subsequently claimed responsibility for shooting and
> killing Mr. Higginson.

*People v. Hubbert*, No. 226318, at 1 (Mich. Ct. App. Dec. 3, 2002).

The prosecutor's theory was that either Petitioner or his co-defendant caused the victim's

death and that both men were involved in the crime.  Although Petitioner's defense was that he

was innocent of all charges and that his co-defendant committed the crimes, Iesha Hicks and

Ebony Huguley testified that Petitioner asked them not to tell anybody that he was involved in

the incident.  Ms. Hicks recalled Petitioner asking her not to tell anybody that he and Hubert

Marshall killed the person.

The trial court sentenced Petitioner to two years in prison for the felony firearm

conviction, followed by concurrent terms of forty to sixty years for the murder and five to fifteen

years for the assault.  Petitioner raised his habeas claims on direct appeal from his convictions.

The Michigan Court of Appeals affirmed his convictions and sentence, *see id.*, and on June 30,

2003, the Michigan Supreme Court denied leave to appeal.  *See People v. Hubbert*, 468 Mich.

940; 664 N.W.2d 218 (2003) (table).

**II.  Exhaustion of State Remedies and Petitioner's Request for a Voluntary Dismissal**

2

## A.  Petitioner's Claims

The pending habeas petition, which is dated February 3, 2004, raises the following grounds for relief:

I.       During trial the only African-American juror briefly spoke to an acquaintance he encountered in court, unaware at the time that the acquaintance was defense counsel's law clerk.  The case was not discussed, and the jury testified his impartiality was not affected.  In excusing the juror, the trial court abused its discretion and infringed Defendant's Sixth Amendment right to a jury composed of a fair cross-section of the community.

II.      Prosecutorial misconduct denied Defendant's federal and state due process rights to a fair trial.

   A.      Defendant was denied a fair trial when the prosecutor erroneously vouched for his case and argued facts beyond the evidence presented.

   B.      Defendant was denied a fair trial when the prosecutor disparaged defense counsel by accusing him of legal trickery, implying that defense counsel did not believe his own client.

III.     The trial court erroneously allowed the prosecutor, over objection, to elicit that witness Iesha Hicks' preliminary examination testimony was consistent with her trial testimony.

IV.      The trial court erred in permitting the prosecutor to "refresh recollection" by reading extensively to the jury from the witness's statement, with the witness responding, "I don't recall."

V.       Ineffective assistance of counsel denied a fair trial.

VI.      The clerk administered a defense oath to the jurors at Defendant's trial, which constituted structural error requiring automatic reversal of Defendant's conviction.

   A.      The oath given did not comport with the requirements of the court rules or the statute.

3

      B.      Because the absence of a proper oath strikes at the
integrity of the trial itself, the error must be deemed
a structural error requiring automatic reversal of
Defendant's conviction.

VII.     The trial court plainly erred in instructing the jury on reasonable
doubt.

      A.      The revised reasonable-doubt instruction
erroneously fails to instruct that to convict, jurors
must be morally certain of guilt.

      B.      The revised reasonable-doubt instruction
erroneously fails to instruct that a reasonable doubt
is such a doubt as would cause a reasonable and
prudent person to hesitate before acting on the
evidence in important matters in the juror's own
life.

VIII.   The cumulative effect of error requires that defendant be granted a
new trial.

IX.     The trial court treated Defendant's conviction as "in effect" a
felony murder conviction carrying a mandatory life sentence, and
therefore exceeded the sentencing guidelines in imposing a 40-60
years sentence for murder.   Defendant was denied his state and
federal rights to due process of law and is entitled to resentencing.

Respondent argues in an answer to the habeas petition that Petitioner's claims are

procedurally defaulted, not cognizable, or meritless.  In a reply titled "Petitioner's Rebuttal

Responses, " Petitioner raises the following new issues:

     A.      The trial court violated the petitioner's right to a fair trial, when
the trial court consistently limited cross-examination, closing
arguments, and motions arguments of the defense counsel in
violation of the petitioner's constitutional rights to a trial by jury.
U.S. Const. Amend. V & VI.

     B.      Petitioner was denied a fair trial, when the verdict of the jury was
against the great weight of the evidence, when there was no
evidence presented that the petitioner had the mens rea intent to
rob or kill the complainant.

4

C.     Petitioner's conviction for murder and assault with intent to rob was based on perjured testimony by Detective Anthony.

D.     Petitioner's rights were violated when the trial court admitted into evidence a statement against interest made by [the] co-defendant, when the declarant was not available to be cross-examine[d] by the defense.

E.     Petitioner was denied the right to a jury of his peers, when the prosecutor intentionally excluded African-American jurors from sitting on the jury.

Petitioner seeks a voluntary dismissal without prejudice so that he can raise these five new claims in state court and then return to federal court, if necessary, without having a subsequent habeas petition deemed a second or successive petition under 28 U.S.C. § 2244(b).

## B.  Exhaustion and Stays

The Supreme Court explained last year that,

> [b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (*per curiam*) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971) (citation omitted)). To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. *Duncan, supra,* at 365-366; *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999).

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks omitted).

Petitioner raised claims I through IX in the Michigan Court of Appeals and in the Michigan Supreme Court. He has not presented claims A through E in either state appellate court. Thus, claims I through IX are exhausted, and claims A through E are unexhausted.

Courts may stay and abey a petitioner's exhausted claims and dismiss his unexhausted claims in limited circumstances. *Rhines v. Weber,* __ U.S. __, __, 125 S. Ct. 1528, 1535 (2005).

5

Stay and abeyance is appropriate only when (1) the petitioner demonstrates "good cause" for his failure to exhaust his claims in state court, (2) the unexhausted claims are potentially meritorious, and (3) the petitioner has not engaged in "abusive litigation tactics or intentional delay." *Id*.

Petitioner may not be engaged in abusive litigation tactics, but he has failed to demonstrate "good cause" for not raising claims A through E in state court. He attempts to blame appellate counsel for not raising the claims on direct review. However, an appellate attorney need not raise every nonfrivolous argument requested by the client, *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983), and it is difficult to demonstrate that an appellate attorney's performance was deficient where the attorney presents one argument on appeal rather than another. *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (citing *Smith v. Robbins*, 528 U.S. 285, 289 (2000)).

Even if appellate counsel was ineffective for failing to raise claims A - E on appeal, the alleged ineffectiveness does not excuse Petitioner's failure to raise his new claims in a *pro se* post-conviction motion. Petitioner could have pursued state collateral remedies by filing a motion for relief from judgment in the trial court and applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. *See* Subchapter 6.500 of the Michigan Court Rules and Mich. Ct. R. 7.301-302.

Furthermore, claims A through E are not potentially meritorious. Claim A alleges that the trial court violated Petitioner's right to a fair trial when the court consistently limited defense counsel's cross-examination, closing arguments, and motions.

The trial court placed some time limits on the parties' examination of witnesses and

6

closing arguments.  However, the court consistently honored the defendants' right to present a defense, even permitting them to re-cross examine witnesses on request.  Defense counsel claimed at sentencing that he thought the trial court gave Petitioner a fair trial.  (Tr. Feb. 10, 2000, at 32.)  Thus, claim A lacks merit.

Claim B alleges that Petitioner was denied a fair trial, because the verdict was against the great weight of the evidence.  Petitioner contends that there was no evidence of an intent to rob or kill the victim.  This claim is plainly meritless because a federal court lacks jurisdiction to grant habeas corpus relief on the ground that a state conviction is against the weight of the evidence.  *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).  Furthermore, there was evidence that Petitioner intended to rob the victim and either shot the victim or passed a gun to his co-defendant, who shot the victim.

Claim C alleges that Petitioner's murder and assault convictions were based on the perjured testimony of Detective Michael Anthony.  Petitioner states that Detective Anthony bullied witnesses to change their original statements and then manipulated the information to fit the events as the detective determined them to be.

Although a few prosecution witnesses testified that they had felt intimidated when Detective Anthony questioned them, this fact does not mean that Anthony's own trial testimony was untruthful.  Petitioner himself called Detective Anthony as his sole defense witness to establish that Petitioner's co-defendant shot the victim.  The Court concludes that claim C is not meritorious.

Claim D alleges that Petitioner's rights were violated when the trial court admitted in evidence the statement of Petitioner's nontestifying co-defendant.  This claim is plainly

7

meritless, because Petitioner sought to have his co-defendant's statement admitted in evidence to establish that the co-defendant shot the victim. Petitioner waived his right to challenge the statement by asking to have the statement admitted in evidence.

Claim E alleges that Petitioner was denied his right to a jury of his peers when the prosecutor intentionally excluded African-Americans from the jury. Petitioner has failed to establish a factual basis for his claim, and the record does not indicate the racial composition of the venirepersons or the jurors who deliberated his case. Even if Petitioner could establish a factual basis for his claim, there was no objection to the prosecutor's use of peremptory challenges. Defense counsel apparently was satisfied with the jurors, for he conceded after trial that Petitioner had been tried by a jury of his peers and that he (defense counsel) would have notified the court if he thought the court had done something illegal or inappropriate. (Tr. Feb. 10, 2000, at 32-33.)

The Court concludes that Petitioner's unexhausted claims (A through E) are plainly meritless for purposes of determining whether a stay is appropriate. Furthermore, Petitioner has failed to show "good cause" for not raising the claims in state court before filing his habeas petition. The Court therefore declines to stay and abey Petitioner's exhausted claims or to dismiss Petitioner's unexhausted claims without prejudice. The Court will proceed to address Petitioner's exhausted claims (I - IX), using the following standard of review.[1]

---

[1] Because Petitioner presented claims A through E in a rebuttal to Respondent's answer, rather than in his habeas petition, the Court is not required to address the substantive merits of those claims. *Tyler v. Mitchell*, 416 F.3d 500, __, No. 02-3896, slip op. at 4 (6th Cir. July 20, 2005).

### III. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original).

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, review is conducted in light of the law as it existed at the time of the final state court decision, *Teague v. Lane,* 489 U.S. 288 (1989), unless an intervening constitutional decision announces a 'watershed' rule of criminal law with implications for the fundamental fairness of the trial proceeding. *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994).

9

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1670 (2005).

## IV.  Discussion

### A.  Removal of a Juror

The first habeas claim alleges that the trial court abused its discretion and violated Petitioner's constitutional right to a jury composed of a fair cross-section of the community when the court excused the only African-American juror.  The juror spoke to defense counsel's law clerk during a break in the proceedings.  The juror was acquainted with the law clerk, but he denied discussing Petitioner's case with the clerk and he claimed that his impartiality was not affected by the conversation.  (Tr. Dec. 16, 1999, at 92-96.)  The trial court nevertheless dismissed the juror on the fourth day of trial, because the juror had violated the court's instruction not to speak with anyone and had given the appearance of impropriety.  (*Id*. at 146-53.)  The Michigan Court of Appeals concluded that the trial court did not abuse its discretion, nor prejudice Petitioner, by dismissing the juror.[2]

The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases "the right to . . . an impartial jury of the State and district wherein the crime shall have been committed ."

> This right to an impartial jury includes the right to a jury drawn from a "fair cross section of the community."  *Taylor v. Louisiana*, 419 U.S. 522, 526 & 530 (1975).  As the Supreme Court has emphasized, however, there is "no requirement that petit juries *actually chosen* must mirror the community."  *Id*. at 538 (emphasis

---

[2]  Respondent argues that Petitioner's claim is procedurally defaulted because Petitioner failed to comply with a Michigan Court Rule regarding motions to remand.  The Court rejects this argument because the Michigan Court of Appeals adjudicated the merits of Petitioner's claim, as opposed to relying on the violation of a state procedural rule.

added).  "Defendants are not entitled to a jury of any particular composition, . . .
but the jury wheels, pools of names, panels or venires from which juries are
drawn must not systematically exclude distinctive groups in the community and
thereby fail to be reasonably representative thereof."  *Id.* (citations omitted).

*United States v. Forest*, 355 F.3d 942, 953 (6th Cir. 2004), *vacated on other grounds by Garner*

*v. United States*, __ U.S. __, 125 S. Ct. 1050 (2005).

Petitioner is not attacking the racial composition of the venirepersons called in his case.

He challenges the racial composition of the jurors who deliberated his case.  As such, his claim

has no merit.  *Taylor*, 419 U.S. at 538.

Furthermore, as recognized by the court of appeals,

[t]he racial composition of the remaining jurors is not apparent from the record.
[D]efendant has failed to identify the factual basis for his claim that none of the
remaining jurors were African-American[s].  Although defense counsel asserted
below that the dismissed juror was the only African-American *male*, he never
indicated that he was the only African-American to serve on the jury.

*Hubbert*, Mich. Ct. App. No. 226318, at 2 (emphasis in original).

Petitioner has failed to establish a violation of the fair-cross-section provision of the

Sixth Amendment.  Therefore, the state appellate court's conclusion did not result in a decision

that was contrary to, or an unreasonable application of, Supreme Court precedent.

### B. Alleged Prosecutorial Misconduct

The second habeas claim alleges that the prosecutor deprived Petitioner of a fair trial by

(1) vouching for his case and arguing facts not in evidence and (2) telling the jurors not to get

caught up in defense counsel's "legal trickery."  Respondent contends that these claims are

procedurally defaulted because Petitioner did not object to the prosecutor's conduct during the

trial.  Petitioner argues in claim V that his trial attorney was ineffective for failing to timely

object on proper grounds to the prosecutor's misconduct.

11

Defense counsel did not object to the prosecutor's comment about "legal trickery " (Tr. Jan. 5, 2000, at 98), but he did object to the prosecutor's comment that he could not show the witnesses' statements to the jurors.  (*Id.* at 103.)  Even assuming that both prosecutorial-misconduct claims are procedurally defaulted, "[p]rocedural default is not a jurisdictional bar to review on the merits." *Howard v. Bouchard*, 405 F.3d 476, 459 (6th Cir. 2005).  In other words, "federal courts have the power to reach the merits notwithstanding a state procedural default." *Batchelor v. Cupp*, 693 F.2d 859, 863 n.2 (9th Cir. 1982) (citing *Fay v. Noia*, 372 U.S. 391, 438 (1963)).  The Court, therefore, will excuse the alleged procedural defaults and proceed to address the merits of Petitioner's second claim.

### 1.  Standard of Review for Prosecutorial-Misconduct Claims

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert. denied,* __ U.S. __, 125 S. Ct. 1645 (2005).  Petitioner must demonstrate that the prosecutor's remarks, taken in the context of the entire trial, were sufficiently prejudicial and infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 643 (1974).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  It is not enough to show that the prosecutor's conduct was improper or even universally condemned.  *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003).  The misconduct must be "so flagrant as to render the entire trial fundamentally unfair." *Id.*

The first question to consider is whether the prosecutor's conduct and statements were improper. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002).  If the conduct and remarks

were improper, the court must consider whether the impropriety was so flagrant as to violate the defendant's right to due process. *Id*. The four factors for determining flagrancy are:

> (1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

*United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994). The Sixth Circuit "has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing argument," *Wilson v. Mitchell*, 250 F.3d 388, 399 (6th Cir. 2001), and has seldom, if ever, granted habeas relief on the basis of vouching. *Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000).

Finally, harmless-error analysis applies to claims of prosecutorial misconduct. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). An error is harmless in the habeas context if it could not have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

## 2. Vouching and Stating Facts not in Evidence

Petitioner alleges that the prosecutor vouched for his witnesses and argued facts not in evidence when he said that the witnesses' statements to the police were not admissible and could be used only for impeachment purposes. Prosecutors may not make improper suggestions, insinuations, or assertions or personal knowledge, *Berger v. United States*, 295 U.S. 78, 88 (1935), and they may not interject personal beliefs into the presentation of their cases, *United States v. Young*, 470 U.S. 1, 8-9 (1985). However,

> [i]Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing

13

the prestige of the office of the United States Attorney behind that witness. *See, e.g., Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993); *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992). Generally, improper vouching involves either blunt comments, *see, e.g., United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony, *see, e.g.,* [*United States v.*] *Carroll*, 26 F.3d [1380, 1388 (6th Cir. 1994)] (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful).

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).

The prosecutor did not express a personal belief in his witnesses, nor insinuate that he was privy to facts about the witnesses' credibility. He claimed that the statements were inadmissible, but that they were consistent with the witnesses' testimony. Defense counsel himself stated in his closing argument that the witnesses' statements were not evidence, (Tr. Jan. 5, 2000, at 84), and he was given ample opportunity to cross-examine the witnesses about any differences in their statements and their trial testimony. The prosecutor's subsequent remarks were a response to defense counsel's insinuation that the prosecutor did not want the jury to see the witnesses' statements because the statements were not favorable to the prosecution. (*Id*. at 79, 84.)

The Court concludes that the prosecutor's remarks about the witnesses' statements being inadmissible were not improper. The prosecutor was entitled to wide latitude in his rebuttal argument and to fairly respond to defense counsel's arguments. *Angel v. Overberg*, 682 F.2d

14

605, 607-08 (6th Cir.1982) (*en banc*) (citing *Donnelly*, 416 U.S. at 637).

To the extent that the prosecutor did imply that he had special knowledge of the content of the witnesses' statements, the error was harmless in light of the strength of the evidence against Petitioner. And because defense counsel objected to the prosecutor's comments about the witnesses' statements, his performance was not deficient or prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### 3. Disparaging Defense Counsel

Petitioner alleges that the prosecutor disparaged defense counsel when he urged the jurors not get caught up in defense counsel's legal trickery. The implication, alleges Petitioner, was that defense counsel did not believe his client.

Attorneys may not make "unfounded and inflammatory attacks on the opposing advocate." *Young*, 470 U.S. at 9. However, the contested remark was a response to defense counsel's insinuation that the prosecutor had kept the witnesses' statements from the jurors because the statements were not favorable to the prosecution. The prosecutor's remark was a fleeting comment in a lengthy trial, and there was no suggestion that defense counsel did not believe Petitioner's claim of innocence. The prosecutor was entitled to fairly respond to defense counsel's arguments. *Angel*, 682 F.2d at 607-08. The Court therefore concludes that the remark was neither improper, nor flagrant, and that defense counsel was not ineffective for failing to object to the remark.

### 4. Summary

The Michigan Court of Appeals concluded on review of Petitioner's claims that the

15

alleged prosecutorial misconduct did not constitute plain error and that defense counsel was not

ineffective.  These conclusions did not result in a decision that was contrary to, or an

unreasonable application of, clearly established federal law, as determined by the Supreme

Court.  Petitioner, therefore, has no right to relief on the basis of his second and fifth claims.

### C.  Evidentiary Claims

The third habeas claim alleges that the trial court erred by permitting the prosecutor to

elicit evidence that Iesha Hicks' testimony at the preliminary examination was consistent with

her testimony at trial.  Petitioner's fourth claim alleges that the trial court erred by permitting the

prosecutor to refresh Jason Cunningham's memory by reading extensively to the jury from

Cunningham's statement to the police.  The Michigan Court of Appeals determined that the trial

court's evidentiary rulings were not erroneous.

"[E]rrors in the application of state law, especially rulings regarding the admission or

exclusion of evidence, [usually are not] questioned in a federal habeas corpus proceeding."

*Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  "Trial court errors in state procedure

and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in

a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the

petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494

(6th Cir.) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)), *cert. denied*, __ U.S. __, 125 S.

Ct. 168 (2004).

### 1.  Iesha Hicks

Petitioner alleges that the prosecutor placed the substance of Iesha Hicks' testimony from

16

the preliminary examination in evidence by asking a series of questions about Hicks' prior testimony. Defense counsel had suggested on cross-examination of Hicks that she lied at the preliminary examination. (Tr. Dec. 15, 1999, at 79 - 81.) The disputed conduct arose when the prosecutor subsequently attempted to demonstrate that Hicks' trial testimony was consistent with her testimony at the preliminary examination. The trial court permitted the prosecutor to proceed in this manner so that he could refresh Hicks' recollection. (*Id*. at 150-59.)

In light of defense counsel's attack on Hicks' credibility, it was not fundamentally unfair to elicit evidence that Iesha Hicks' trial testimony was consistent with her testimony at the preliminary examination. Furthermore, any error in the prosecutor's method of questioning Hicks was harmless, given the uncontested evidence, including Ebony Huguley's testimony, which was similar to Hicks' testimony.

### 2. Jason Cunningham

Petitioner alleges that the trial court erroneously permitted the prosecutor to refresh Jason Cunningham's recollection by reading extensively from Cunninigham's statement to the police. The prosecutor did not read extensively from Cunningham's statement; rather, he asked Cunningham to read his statement to himself and then he questioned Cunningham about the statement. (Tr. Dec. 20, 1999, at 119-37.) Defense counsel was given an opportunity to re-cross examine Cunningham. The prosecutor's conduct was not unfair, and any error in his procedures was harmless in light of the other admissible evidence.

### 3. Summary

The tactics used by the prosecutor, and authorized by the trial court, were not

fundamentally unfair.  Therefore, Petitioner's third and fourth claims do not rise to the level of constitutional errors.  Even if constitutional error occurred, the other evidence against Petitioner was overwhelming and the errors were harmless because they could not have had a "substantial and injurious effect or influence" on the jury's verdict.  *Brecht*, 507 U.S. at 623.

### D.  The Oath to the Jury

The sixth habeas claim alleges that the oath administered to the jurors did not comport with state law.[3]  Petitioner contends that not having a properly sworn jury was equivalent to having no jury at all and that the lack of a proper oath constituted structural error, which requires automatic reversal of his conviction.  Respondent argues that this claim is procedurally defaulted because Petitioner did not object to the oath at trial.

A procedural default in the habeas context is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The procedural rule in question here is the contemporaneous-objection rule, which is enforced in Michigan.  *Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir.), *cert. denied*, 540 U.S.

---

[3]  The oath read to the jurors was:

Do you solemnly swear or affirm that you will truthfully deliberate this case according to the laws and the evidence of this state?

(Tr. Dec. 13, 1999, at 245.)

18

1004 (2003) (citing *People v. Schutte*, 240 Mich. App. 713, 721-22; 613 N.W. 2d 370, 377

(2000)). Petitioner violated this rule by not objecting at trial to the form of the oath administered

to the jury. The Michigan Court of Appeals relied on Petitioner's failure to object by stating,

"Because defendant did not object to the oath that was administered at trial, we review this

unpreserved issue for plain error affecting defendant's substantial rights." *Hubbert*, Mich. Ct.

App. No. 226318, at 4. Plain-error review by a state appellate court constitutes enforcement of

the State's contemporaneous-objection rule. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir.

2004), *cert. denied*, __ U.S. __, __, 125 S. Ct. 1939 (2005). Furthermore, the Michigan Supreme

Court did not set aside the procedural bar and decide Petitioner's claim on the merits.

The contemporaneous-objection rule was an adequate and independent basis for the

disposition of Petitioner's claim, because the rule was in effect long before Petitioner's trial and

because the court of appeals actually relied on it. Therefore, in order for Petitioner to prevail on

his claim, he must show cause for his procedural default and resulting prejudice or that failure to

review his claim will result in a miscarriage of justice.

Petitioner has not offered any argument in support of a finding of "cause and prejudice."

The Court therefore may deem the "cause and prejudice" argument abandoned. *Roberts v.

Carter*, 337 F.3d 609, 613 (6th Cir. 2003), *cert. denied*, 540 U.S. 1151 (2004).

Petitioner may overcome his procedural default, even in the absence of "cause and

prejudice," upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001)

(citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417

(1993)). This narrow exception to the general rule requires the habeas applicant to demonstrate

that the alleged constitutional error probably resulted in the conviction of one who is actually

innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324. "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 327.

Petitioner has not submitted any new and credible evidence of actual innocence. Therefore, a miscarriage of justice will not result from the Court's failure to consider his sixth claim on the merits. Petitioner's procedural default bars substantive review of the claim.

### E. The Jury Instructions

Petitioner alleges next that the trial court's instruction on reasonable doubt was unconstitutional. According to Petitioner, the instruction failed to inform the jurors that (1) to convict him, they had to be morally certain of guilt and (2) a reasonable doubt is a doubt that would cause a reasonable and prudent person to hesitate before acting on important matters. The Michigan Court of Appeals found this claim to be meritless.

"Errors in jury instructions do not rise to the level of a constitutional violation unless the habeas petitioner can establish that the 'instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Buell v. Mitchell*, 274 F.3d 337, 365 (6th Cir. 2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). In *Victor v. Nebraska*, 511 U.S. 1(1994), the Supreme Court stated that

> [t]he beyond a reasonable doubt standard is a requirement of due process, but the
> Constitution neither prohibits trial courts from defining reasonable doubt nor

20

requires them to do so as a matter of course.  *Cf. Hopt v. Utah,* 120 U.S. 430, 440-441  (1887).  Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, *see Jackson v. Virginia,* 443 U.S. 307, 320, n. 14 (1979), the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  *Cf. Taylor v. Kentucky,* 436 U.S. 478, 485-486, (1978).  Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury."  *Holland v. United States,* 348 U.S. 121, 140 (1954).

*Id.* at 5.  In other words, "[t]here are no magic words that must be included or omitted."  *Binder*

*v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999).

The trial court charged Petitioner's jury in relevant part as follows:

A person who is accused of a crime is presumed to be innocent.  This means that you start with the presumption that the defendant is innocent.  This presumption continues throughout the trial and entitles the defendant to a verdict of not guilty unless you are satisfied beyond a reasonable doubt that he is guilty.

Every crime is made up of parts called elements.  The prosecutor must prove each element of the crime beyond a reasonable doubt.  The defendant is not required to prove his innocence or to do anything.  If you find that the prosecutor has not proven every element beyond a reasonable doubt, then you must find the defendant not guilty.

A reasonable is  a  fair, honest doubt growing out of the evidence or lack of evidence.  It is not merely a speculative, imaginary or possible doubt but it's a doubt which is based upon reason and common sense.  A reasonable doubt is just that, a doubt that is reasonable after a careful and considered examination of the facts and circumstances of this case.

(Tr. Jan. 5, 2000, at 106-07.)

The trial court's definition of reasonable doubt, when read in context, adequately

informed the jury of the prosecutor's burden of proof.  In fact, the United States Court of

Appeals for the Sixth Circuit upheld the constitutionality of the same instruction in *Binder.*  The

Sixth Circuit specifically stated that "hesitate to act" language is not required in a reasonable

doubt instruction.  *Binder*, 198 F.3d 179.  In conclusion, the state court's determination that

21

Petitioner's claim lacked merit was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### F.  Cumulative Effect

The eight habeas claim alleges that the cumulative effect of errors requires that Petitioner be granted a new trial.  The Michigan Court of Appeals found no merit in this claim in light of its resolution of Petitioner's other claims.  This Court finds no merit in the claim, because "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.), *opinion corrected on denial of reh'g*, 307 F.3d 459 (2002), *and cert denied*, 538 U.S. 947 (2003).  Therefore, it cannot be said that the state court's judgment is contrary to any Supreme Court decision so as to warrant habeas relief under 28 U.S.C. § 2254(d)(1).  *Id.*

### G.  The Sentence

The ninth and final habeas claim alleges that the trial court deprived Petitioner of his rights to due process and a proportionate sentence when the court exceeded the sentencing guidelines of ten to twenty-five years.  Petitioner contends that the court treated his second-degree murder conviction as if it were a first-degree murder conviction.

Petitioner's contention that the trial court exceeded the sentencing guidelines and violated the principle of proportionality set forth in *People v. Milbourn*, 435 Mich. 630, 636; 461 N.W.2d 1, 2-3 (1990), are matters of state law.  *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.).  "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  A federal habeas court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *Estelle v.*

*McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam )); s*ee also Pulley v. Harris,* 465 U.S. 37, 41 (1984) (stating that "[a] federal court may not issue the writ on the basis of a perceived error of state law").

Moreover, a plurality of the Supreme Court has held that "the Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id*. at 1001 (Kennedy, J., concurring). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

The maximum penalty for second-degree murder in Michigan is life imprisonment. MICH. COMP. LAWS § 750.317. Petitioner was a teenager when sentenced. His sentence of forty to sixty years for second-degree murder was legal under state law, and "a sentence within the statutory maximum . . . generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)). A sentencing court may consider a wide range of factors, including "conduct of which a defendant has been acquitted." *United States v. Watts*, 519 U.S. 148, 153 (1997).

Petitioner nevertheless maintains that the trial court sentenced him as though he were guilty of first-degree murder. The trial court did say that,

> Felony Murder . . . is, in essence, Second Degree Murder plus armed robbery or
> the commission of another felony. That's Felony Murder for all practical

23

> purposes.  So what we have here is Second Degree Murder plus the felony plus
> the Felony Firearm.  If you look at it in the totality of the circumstances, and look
> at what the jury did, it is, in essence, Felony Murder.  If he had been convicted as
> the prosecutor noted before, it would have been natural life without parole had
> they done so.

(Tr. Feb. 10, 2000, at 43-44.)

The trial court offered the following additional reasons for departing from the sentencing guidelines:  (1) the fact that the crime was a heinous, cold-blooded, and calculated crime of opportunity; (2) there was no prior relationship between Petitioner and the victim, giving rise to animosity; (3) Petitioner directed the victim to a secluded area in order to commit a crime; (4) Petitioner was armed with a weapon at one point and passed it to his co-defendant, who shot the victim; and (5) Petitioner was not a passive participant in the crime.  (*Id*. at 40-44.)  The Michigan Court of Appeals concluded that "the trial court's sentencing decision was based only on the facts of the charged offense" and that it was not improper under state law to "consider whether [Petitioner] committed a more serious offense."  *Hubbert*, Mich. Ct. App. No. 226318, at 5.

In conclusion, the trial court was permitted to consider conduct of which Petitioner was acquitted.  *Watts*, 519 U.S. at 153.  Furthermore, the sentence imposed was not grossly disproportionate to the crime.  A "sentence of forty to sixty years for second-degree murder "is neither 'extreme' nor 'grossly disproportionate' so as to violate the Eighth Amendment."  *Austin v. Jackson*,  at 302 (citing *Harmelin*, 501 U.S. at 959).   Therefore, the state appellate court's conclusions did not result in a decision that was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and Petitioner has no right to habeas relief on the basis of his sentencing claim.

24

**V. Conclusion**

Petitioner's sixth claim is procedurally defaulted, and his remaining claims lack merit because the state court's adjudication of those claims was not contrary to, or an unreasonable application of, Supreme Court precedent.  Petitioner's application for the writ of habeas corpus [Doc. #4], is DENIED.


s/John Corbett O'Meara
John Corbett O'Meara
United States District Judge


Dated:  September 7, 2005